UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA D. TYLER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-1167-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13, 15. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.     Background

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since January 1, 2012. Administrative Record ("AR") 368-83. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 280-92. On October 27, 2015, a hearing was held before an administrative law judge ("ALJ"). *Id.* at 25-51. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

On March 25, 2016, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id*. at 9-20. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, hypertension, mild osteophyte and hypertrophy of the lumbar spine, obstructive sleep apnea, rheumatism, spondylosis, insomnia, diabetes, obesity, opioid dependence, mood disorder, major

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

depressive disorder, panic disorder and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl, can understand, remember and carry out simple instructions and tasks, can make simple work-related decisions, cannot engage in public contact as a part of her job duties, can interact with coworkers on a superficial and non-collaborative basis and requires a structured work environment.

\* \* \*

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born [in] 1976 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 12-19.

Plaintiff's request for Appeals Council review was denied on March 29, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3.

II.     Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    Analysis

Plaintiff argues that the ALJ erred in (1) failing to find her that carpal tunnel syndrome and headaches were severe impairments, (2) rejecting the opinions of her treating and examining physicians, (3) rejecting her testimony and third-party statements, (4) assessing her residual functional capacity ("RFC"), and (5) finding that there are other jobs that she can perform. ECF No. 13.

     A.     Severe Impairments

Plaintiff first argues that the ALJ erred at step-two of the sequential evaluation by failing to find that her carpal tunnel syndrome and headaches were severe impairments. *Id*. at 14-17.

/////

/////

### 1. Relevant Legal Standards

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step-two the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, he must consider all impairments, including non-severe impairments, at all subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290; *see also Burch v. Barnhart*, 400 F.3d 676, 682-82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

### 2. Carpal Tunnel Syndrome

At step-two, the ALJ considered evidence showing that plaintiff had been diagnosed with carpal tunnel syndrome ("CTS"), but ultimately determined that the impairment was not severe. AR 13. The ALJ observed that nerve conduction studies revealed moderate left median neuropathy and mild to moderate right median neuropathy, which was consistent with CTS. *Id.*

/////
/////
/////
/////

However, the ALJ concluded that plaintiff's CTS was not severe, finding that:

> the medical record does not evidence further treatment of this impairment other than sporadic medication refills. Such an absence of diagnostic findings or continuing treatment, suggests that this impairment does not cause any functional limitations in the claimant's ability to perform work and thus, is nonsevere.

AR 13.

Contrary to the ALJ's finding, the record reflects that plaintiff regularly experienced problems related to CTS during the relevant period.[2] In January 2012, plaintiff reported that she started feeling burning in her arms and hands, as well as tingling in her fingers. *Id*. at 1279. She had decreased sensation in her fingers, and she was diagnosed with carpal tunnel syndrome, uncontrolled. *Id*. at 1280. Plaintiff was seen again in May 2012, at which time she reported numbness in her hands and fingers. *Id*. at 1262. In November 2013, plaintiff had pain radiating down both arms and into her hands, and positive Tinel and Phalen's signs bilaterally were noted. *Id*. at 1167-69. Treatment notes from April 2014 reflect complaints of worsening numbness, tingling, and burning in her upper extremities, and issues with plaintiff's arms and hands falling asleep. *Id*. at 1155-59. At that time, plaintiff received a referral for a nerve conduction study, which showed evidence of median neuropathy at the wrists consistent with CTS. *Id*. 1321. In January 2015, plaintiff complained of worsening pain in her hands, and weakness and numbness. *Id*. at 1364. On exam, she had decreased sensation and strength in some of her digits, and a decreased grip strength. *Id*. at 1366. Her treating physician again diagnosed her with CTS, which he planned to treat with a cortisone injection. *Id*. at 1367). However, subsequent treatment records do not establish that plaintiff actually received an injection. *Id*. at 1336-47 1360-63.

These records, the vast majority of which were not discussed in the ALJ's decision, show that plaintiff's CTS was more than a slight abnormality and simply cannot be characterized as having no more than a minimal effect on plaintiff's minimal effect on the ability to perform work activities. *See Webb*, 433 F.3d at 686. Accordingly, the finding that plaintiff's CTS does not

---

[2] The administrative record contains numerous medical records related to plaintiff's prior application for disability benefits that significantly predate the alleged disability onset day of January 1, 2012.

6

cause any functional limitations is not supported by substantial evidence. Furthermore, the failure to find this impairment severe was not harmless as there is no indication from the ALJ's decision that the limiting effect of plaintiff's CTS was considered in assessing plaintiff's RFC. *Smolen*, 80 F.3d at 1290 (ALJ is required to consider all impairments, including non-severe impairments, in assessing claimant's RFC); *see also Burch v. Barnhart*, 400 F.3d 676, 682-82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

### 3. Headaches

Plaintiff further argues that the ALJ erred by ignoring evidence showing that she has severe headaches. ECF No. 13 at 16-17.

In advancing her argument, plaintiff cites to only four treatment records. *Id*. The first is a treatment record from April 2006, well before the alleged onset date, reflecting complaints of daily headaches. AR 733. The remaining three are from July, August, and September 2013. *Id*. at 1179, 1199, 1205. Although plaintiff described her headaches as recurrent at that time, plaintiff's treating physician attributed plaintiff's headaches to lack of sleep, noting that plaintiff seemed to be sleep deprived since the recent birth of her child. *Id*. at 1205-07; *see also id*. at 1122 (reflecting that plaintiff's child was born March 3, 2013). Significantly, treatment records from after August 2013 do not show further complaints of headaches or treatment for that impairment. *Id*. at 1146-78.

Thus, the record does not establish that plaintiff's headaches impaired her ability to work or that that they lasted more than 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement). Further, there is no merit to plaintiff's contention that the ALJ erred by not discussing evidence related to her headaches, as the limited medical records addressing this impairment were neither significant nor probative. *See Howard ex rel. v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to "discuss evidence that is neither significant nor probative."); *Coleman v. Colvin*, 524 F. App'x 325, 326 (9th Cir. 2013) ("[T]he ALJ did not err by failing to specifically address Ms.

Coleman's diagnoses of sleep disorder and chronic pain—an ALJ need only explain why 'significant probative evidence has been rejected'").

B.   The ALJ's Treatment of Medical Opinion Evidence

Plaintiff also argues that the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinions of treating physician Dr. Laurence Heard and examining psychologist Sid Cormier.  ECF No. 13 at 17-23.

1.   Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

2.   Background

In October 2013, Dr. Heard completed a medical source statement.  He stated that plaintiff's primary symptoms were pain, memory loss, depress, and anxiety.  AR 1138.  Dr. Heard

8

diagnosed plaintiff with rheumatism, spondylosis, and obstructive sleep apnea with insomnia. *Id*. It was Dr. Heard's opinion that plaintiff was incapable of working and could perform no heavy lifting or prolonged sitting or standing. *Id*. Additionally, he noted that plaintiff had emotional lability and poor concentration. *Id*.

Dr. Heard also completed a fibromyalgia medical source statement in June 2011 in relation to plaintiff's prior application for disability benefits. AR 1112-14. Dr. Heard stated that plaintiff's symptoms included multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, temporomandibular joint dysfunction, numbness and tingling, anxiety, panic attacks, depression, and chronic fatigue. *Id*. at 1112. Dr. Heard opined that plaintiff could lift less than 10 pounds occasionally and 10 pounds rarely; sit and stand/walk for less than two hours in an eight-hour workday, stand and sit for 15 to 20 minutes at one time; rarely twist, stoop, crouch, and climb ladders and stairs; grasp, twist, and reach in front only ten percent of the time during an eight-hour day, but never reach overhead or perform fin manipulations. *Id*. at 1112-15. He further opined that plaintiff would likely be off task 25 percent of the time, miss more than four days a month, and would not be able to tolerate even low stress work. *Id*. at 1114.

Plaintiff subsequently underwent a comprehensive mental evaluation with examining psychologist Sid Cormier, Ph.D. *Id*. at 1139-43. Dr. Cormier noted that during the evaluation plaintiff appeared to be in obvious psychological distress and demonstrated behavior consistent with her symptoms. *Id*. at 1140. Dr. Cormier also stated that plaintiff was in obvious physical discomfort consistent with her reports of pain and appeared patchy on her narcotic pain medication, which included Norco and methadone. *Id*. at 1139-41. Dr. Cormier diagnosed plaintiff with prescription opioid dependence; major depressive disorder, recurrent, moderate; and panic disorder without agoraphobia. *Id*. at 1142. He opined that plaintiff was moderately to seriously impaired in performing complex and detailed tasks as well as simple and repetitive tasks, maintaining regular attendance and performing work activities on a reasonably consistent basis, and completing a normal workday or work week without interruptions; mildly impaired in concentration; and moderately impaired in persistence and pace. *Id*. at 1142-43. Dr. Cormier

further opined that plaintiff could interact with coworkers and the general public and deal with typical stresses encountered in a competitive work situation. *Id*. at 1143. Dr. Cormier, however, strongly suspected that plaintiff's prescription opioid dependence may be affecting her cognitive functioning. *Id*.

Two state agency non-examining physicians, Dr. C. David and Dr. H. Wright, also provided opinions regarding plaintiff's physical limitations. Dr. David opined that plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently climb ramps and stairs but never ladders, ropes, scaffolds; frequently stoop; occasionally kneel, crouch, and crawl; and should avoid concentrated exposure to heat and hazards. *Id*. at 137-38. Dr. H. Wright opined that plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs but never ladders, ropes, scaffolds; frequently stoop; occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to heat and hazards. *Id*. at 179-80.

The record also contains two opinions from state agency non-examining psychologists, Dr. Brady Dalton, Psy.D and Cathy Word, Ph.D., addressing plaintiff's mental impairments. Both Dr. Dalton and Dr. Word opined that plaintiff could remember basic workplace locations and procedures; remember and understand simple instructions; maintain concentration, persistence, and pace for simple tasks and routines tasks throughout a normal workday/workweek; interact with co-workers and supervisors on a superficial and non-collaborative basis; and have brief public contact. *Id*. at 139-40, 181-83.

3. Dr. Heard's opinions

The ALJ gave little weight to Dr. Heard's 2013 opinion, while giving substantial wait to the opinions proffered by the non-examining physicians. AR 16. The ALJ found that Dr. Heard's opinion was not entitled to controlling weight because it was conclusory and appeared to be based quite heavily on plaintiff's subjective reports. *Id*. "An ALJ may reject a physician's opinion where it is premised primarily on plaintiff's subjective complaints and the ALJ properly

discounted plaintiff's credibility." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, there is no obvious indication that Dr. Heard relied primarily on plaintiff's subjective complaints. Furthermore, the ALJ provided no explanation as to how she reached her conclusion that the opinion was based heavily on plaintiff's subjective complaints. *Cf Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (internal quotations omitted).

More significantly, Dr. Heard's reliance on plaintiff's subjective complaints would not, itself, justify the rejection of his opinion under the circumstances of this case. The care Dr. Heard provided plaintiff included treatment for fibromyalgia, an impairment the ALJ found severe. AR 12. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id*. at 589-90. "The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id*. at 590. "Objective physical signs, laboratory results, and x-ray results are generally negative, and because the majority of patients appear tense and anxious and have no recognizable objective basis for symptoms, the syndrome is often considered psychogenic." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872-972 (9th Cir. 2004), *abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (holding that ALJ erred in effectively requiring 'objective' evidence for a disease that eludes such measurement).

As there are no clinical findings to establish the presence of fibromyalgia, Dr. Heard would have necessarily had to rely on plaintiff's subjective complaints. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (finding that ALJ erred in rejecting treating opinion as unsupported by objective medical evidence where claimant suffered from fibromyalgia). Consequently, this was not a specific and legitimate. However, any reliance on this reason was

harmless. As discussed below, the ALJ's other reason for discounting Dr. Heard's opinion was sufficient. *See, e.g., Carmickle*, 533 F.3d at 1162-63 (ALJ's reliance on two unsupported reasons was harmless error where the adverse credibility determination was otherwise supported by legally sufficient reasons).

As for the ALJ's other reason for discounting Heard's opinion, plaintiff argues that "the ALJ failed to explain how Dr. Heard's opinion was 'conclusory.'" ECF No. 13 at 20. Review of the opinion, however, makes clear that no further explanation was necessary. Dr. Heard merely listed plaintiff's diagnoses and primary symptoms, and then provided a relatively vague opinion regarding plaintiff's functional limitations. AR 1138. He did not identify any clinical finding supporting his opinion, nor did he explain the basis for his opinion. *Id*. Accordingly, this was a sufficient basis for discounting Dr. Heard's 2013 opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

The rejection of Dr. Heard's June 2011 opinion, however, is more problematic. The ALJ's decision makes no mention of it. The Commissioner argues that the ALJ was not required to address it. According to the Commissioner, the 2011 opinion was included in the administrative record because there was a question as to whether a continuing presumption of non-disability attached to the decision denying plaintiff's prior application for benefits. ECF No. 15 at 15. The Commissioner contends that since the ALJ found that the presumption did not apply, the opinion was not relevant to the disability determination and did not need to be discussed. *Id*. The argument is simply not consistent with Ninth Circuit law.

"[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012. Rather, an ALJ is only required to "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir.

12

1989) (holding that medical report that predated the period at issue was only relevant to proving that claimant's condition had worsened since the denial of previous application for benefits). However, the Ninth Circuit has made clear that "the ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (holding that the ALJ erred in failing to consider medical opinions that predated the alleged disability onset date by several years, but concluding that the error was harmless) (citing *Tommasetti*, 533 F.3d at 1041).

Thus, the ALJ erred in failing to address Dr. Heard's June 2011 opinion.[3]

### 4. Dr. Cromier's Examining Opinion

Plaintiff also argues that the ALJ erred by failing to provide sufficient reasons for her rejection of Dr. Cromier's examining opinion. ECF No. 13 at 22-23. In her decision, the ALJ provided a single reason for rejecting Dr. Cromier's opinion: it "is unpersuasive because [plaintiff] was under the influence of narcotic medication at the time of the evaluation." AR 16.

Plaintiff was indeed taking narcotic medication at the time of Dr. Cromier's evaluation. Additionally, Dr. Cromier suspected that plaintiff's opioid dependence may be affecting her cognitive function. *Id.* at 1143. But the records show that during the relevant period plaintiff was always taking narcotic medication, which is necessary to address pain caused by her physical impairments. *See* AR 1136-32, 1146-1281 (reflecting continuous treatment of plaintiff's pain with narcotic medications during the relevant period.). Furthermore, plaintiff's treating physician concluded that plaintiff is not able to go without narcotic medications. *Id.* at 1251 (letter from Dr. Heard stating that plaintiff "takes many medications including narcotics, and going without these medications for any length of time could cause her harm."). Consequently, there is no basis for concluding that plaintiff generally functions better than she did during the examination with Dr. Cromier.

/////

---

[3] The court declines to address whether the error was harmless. As explained herein, the matter must be remanded not only because the ALJ's failed to properly consider plaintiff's CTS, but also due to the ALJ's failure to provide legally sufficient reasons for rejecting Dr. Cromier's examining opinion.

13

1 | Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Cromier's opinion.

### C. Remand for Further Proceedings

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotes and citations omitted). A district court may remand for immediate payment of benefits only where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 563 (9th Cir. 2004). However, even where all three requirements are satisfied, the court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407.

As discussed above, consideration and evaluation of relevant evidence, including records related to plaintiff's CTS and Dr. Heard's 2011 opinion is warranted. Given that such evidence must be addressed, the court cannot find that further administrative proceedings would serve no useful purpose. Accordingly, remand for further proceedings is appropriate.

### IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

/////

/////

/////

14

4. The Clerk is directed to enter judgment in the plaintiff's favor and close the case.

DATED: September 27, 2018.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE